IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LYNN D. BECKER,<br><br>                Plaintiff,<br><br>vs.<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION; THE UINTAH AND OURAY TRIBAL BUSINESS COMMITTEE; UTE ENERGY HOLDINGS, LLC,<br><br>                Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:25-CV-643-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the court on Plaintiff Lynn D. Becker's Motion for Preliminary Injunction [ECF No. 6], Defendants Ute Indian Tribe of the Uintah and Ouray Reservation, the Uintah and Ouray Tribal Business Committee, and Ute Energy Holdings, LLC's (collectively "the Tribe") Rule 12(b) Motion to Dismiss [ECF No. 19] and Defendant Ute Energy Holdings LLC's Rule 12(f) Motion to Strike Becker's Complaint or Alternatively to Strike Redundant, Immaterial, Impertinent, and Scandalous Matters In It [ECF No. 17]. On November 25, 2025, the court held a hearing on the motions. At the hearing, David K. Isom represented Plaintiff, and Ben Fenner, Ethan Tourtellotte, and J. Preston Stieff represented Defendants. The court took the motions under advisement. After carefully considering the parties' memoranda and arguments, as well as the facts and law relevant to the pending motion, the court issues the following Memorandum Decision and Order on the pending motions.

1

## BACKGROUND

Plaintiff Lynn Becker and the Tribe have an ongoing twelve-year dispute, involving five other lawsuits in three separate court systems. This is the sixth lawsuit to grow out of the long-standing dispute. The dispute stems from an Independent Contractor Agreement the Tribe and non-Indian, Becker entered in 2005, under which Becker was to receive a salary and 2% of "net revenue distributed to Ute Energy Holding, LLC, from Ute Energy, LLC."

The Tribe operates its own tribal government, including an Energy and Minerals Department that oversees approximately 1.3 million acres of trust lands. Prior to 2001, the Tribe's Business Committee managed the Tribe's oil and gas deposits in a passive manner, which consisted of waiting for oil and gas companies to contact the Bureau of Indian Affairs (BIA) for permission to enter an oil and gas lease or development agreement on Tribal lands. In December 2001, the Tribe changed course to an active management methodology to actively market its mineral assets.

In the early 2000s, Becker worked as a consultant for a private company and worked on projects involving the Tribe. In 2004, Becker began working in the Tribe's Energy and Minerals Department, managing and developing tribal energy and mineral resources on the Tribe's reservation. Becker's office was inside the tribal headquarters on the reservation. In April 2005, the Tribe and Becker entered into the Independent Contractor Agreement ("the Agreement") referenced above, which was made retroactively effective as of March 1, 2004. The contract term was for an initial period of twenty-four months, which could be extended in twelve-month periods. On October 31, 2007, Becker resigned under the terms of the Agreement. Becker claims that he was not paid according to the compensation terms in the Agreement. The Tribe claims that Becker was part of a scheme to defraud it out of valuable interests in oil and gas and that Becker

improperly retained a proprietary mapping system and geoseismic and geological data.

In 2013, Becker sued the Tribe in this federal district court, alleging that the Tribe breached the Agreement and owed him royalties. The district court dismissed the lawsuit for lack of subject-matter jurisdiction, concluding that Becker's claims against the Tribe were state law claims that did not depend upon the resolution of a substantial question of federal law. The Tenth Circuit affirmed in *Becker v. Ute Indian* Tribe, 770 F.3d 944 (10th Cir. 2014).

Because there was no subject matter jurisdiction in federal court, Becker then filed suit against the Tribe in Utah state court in December 2014. In July 2015, the state court rejected the Tribe's attempt to have the action dismissed on the grounds that the state court lacked jurisdiction and that the Tribe was protected by tribal sovereign immunity. In 2016, while the state court case was still proceeding, the Tribe sued Becker and Utah State District Court Judge Barry Lawrence in federal district court to enjoin the state proceeding, asserting that the state court lacked jurisdiction to hear the parties' dispute. The Tribe also filed suit against Becker in Tribal Court seeking declarations that the Agreement was void and that the Tribe's purported waiver of sovereign immunity in the Agreement was executed in violation of Tribal Law.

The federal district court initially dismissed the Tribe's federal suit for lack of federal-court-subject-matter jurisdiction. The Tenth Circuit reversed that decision, holding that the Tribe's claim that federal law precludes state-court jurisdiction over a claim against Indians arising on the reservation presents a federal question that sustains federal jurisdiction. *Ute Indian Tribe of the Uintah and Ouray Reservation, et al. v. Lawrence, et al.*, 875 F.3d 539, 548 (10th Cir. 2017). The district court then denied the Tribe's requested preliminary injunction seeking to enjoin the state court proceedings, and the Tenth Circuit again reversed. *Ute Indian Tribe of the Uintah and Ouray Reservation, et al. v. Lawrence, et al.,* 22 F.4th 892 (10th Cir. 2022). The Tenth Circuit held

3

that the Tribe was entitled to not only a preliminary injunction, but a permanent injunction. *Id.* at 909-10. The Tenth Circuit found that Becker's state-court claims arose on the reservation, and because the claims arose on the reservation, the state court lacked subject matter jurisdiction absent congressional authorization. *Id.* at 906-07. While the district court had found that 25 U.S.C. § 1322 provided such authorization, the Tenth Circuit explained that § 1322 requires tribal consent to state-court jurisdiction, and tribal consent is obtained only by holding a special election under 25 U.S.C. § 1326. *Id.* Because the Tribe never provided such consent, the Tenth Circuit found that the state court lacked subject matter jurisdiction. *Id.* at 907. Due to the particular circumstances of the appeal, the Tenth Circuit ordered the district court to permanently enjoin the state-court proceedings. *Id.* at 909-10.

While the Tribe's lawsuit seeking to enjoin the state-court proceedings was pending, Becker again sued the Tribe in federal court seeking to enjoin the tribal court proceedings. The district court preliminarily enjoined the Tribal Court proceedings. In 2017, the Tenth Circuit reversed that injunction. *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 868 F.3d 1199, 1205 (10th Cir. 2017). At the Tenth Circuit, the Tribe contended that the tribal-exhaustion rule, which ordinarily requires a federal court to abstain from determining the jurisdiction of a tribal court until the tribal court has ruled on its own jurisdiction, deprived the district court of jurisdiction to determine the tribal court's jurisdiction. The Tenth Circuit did not agree that the rule was jurisdictional but agreed that the district court should have abstained on the issue. *Id.* at 1203-05. The Tenth Circuit found that although the Agreement contains a waiver of the tribal-exhaustion rule, Becker had not shown a likelihood of success based on the validity of the waiver. *Id.* at 1204. Becker argued that the exhaustion rule does not apply because it is clear that the tribal court would lack jurisdiction to hear the dispute. But the Tenth Circuit stated that "in

4

the context of this case that argument does not present any additional issues. Mr. Becker has not disputed that if the Contract is void, then the tribal court has jurisdiction and the exhaustion rule applies. And the Tribe has not disputed that if the Contract is valid, then it waived the exhaustion rule." Becker failed to adequately counter the Tribe's contention that the entire Agreement, including the waiver, was void because it did not receive federal-government approval, as is required for contracts transferring property held in trust for the Tribe by the federal government. *Id.* The Tenth Circuit stated that if there is law exempting the Agreement from the requirement of federal approval, Becker did not provide it to the court. In addition, in response to Becker's argument that even if the Agreement required federal approval, the waiver provision is enforceable because it is severable under the Agreement's severability clause, the Tenth Circuit found that the waiver provision was not severable in an agreement void ab initio even if it contains a severability clause. *Id.* Because Becker did not meet his burden, the Tenth Circuit held that the exhaustion rule applies and the Tribal Court should consider in the first instance whether it has jurisdiction. *Id.* at 1205.

On remand, the district court again preliminarily enjoined the Tribal Court proceedings and enjoined the Tribal Court's orders from having preclusive effect in other proceedings. In 2021, the Tenth Circuit reversed again, concluding that the tribal exhaustion rule required the district court to dismiss Becker's federal lawsuit without prejudice. *Becker v. Ute Indian Tribe of Uintah and Ouray* Reservation, 11 F.4th 1140, 1150 (10th Cir. 2021). The Tenth Circuit recognized that the Agreement "expressly purported to waive the Tribe's sovereign immunity and to have all disputes settled in a non-Indian court. Nevertheless, the Tribe has raised serious questions regarding the validity of the contract as a whole, as well has the validity of the purported waiver of sovereign immunity in particular. Out of respect for tribal self-government and self-determination, we

5

conclude that the questions the Tribe has raised regarding the validity of the Agreement, as well as the threshold question of whether the Tribal Court has jurisdiction over the parties' dispute, must be resolved in the first instance by the Tribal Court itself." *Id*. at 1150. Becker's waiver argument is only applicable if the Agreement itself is determined to be valid. *Id.*

The Tenth Circuit recognized that since the last Tenth Circuit ruling, "the Tribal Court has determined that it has jurisdiction over the Tribe's suit against Becker and has also agreed with the Tribe that the Agreement is void under both federal and tribal law." *Id.* The Tenth Circuit stated that because of the district court's injunction, however, appellate review of the decision was not complete. *Id.* The Tenth Circuit held that until such appellate review was complete, and tribal court system had a full opportunity to evaluate the claims, "federal courts should not intervene." *Id.* "'If [and when] the Tribal Appeals Court upholds the lower court's determination that the tribal courts have jurisdiction, [Becker] may challenge that ruling in the District Court.'" *Id.* Therefore, the Tenth Circuit instructed the District Court to dismiss Becker's case without prejudice.

The Tribal Court action between the parties began in 2016, was enjoined by the federal district court several times, and is ongoing. In March 2017, the Tribal Court denied Becker's Motion to Dismiss the action, denied the Tribe's Motion for Summary Judgment, and granted the Tribe leave to amend its Complaint. Becker's Motion to Dismiss argued that the Tribe had waived sovereign immunity in the Agreement and had agreed to dispute resolution in federal district court or any other court of competent jurisdiction of the federal courts lacked jurisdiction. Relying on the Tenth Circuit's decision in *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944 (10th Cir. 2014), dismissing Becker's first action against the Tribe in federal court for lack of federal question jurisdiction, the Tribal Court stated that "it turns out the federal court lack[ed] jurisdiction." The tribal court found that it had jurisdiction, recognizing that it was at an

6

early stage in the litigation. The court noted the Tenth Circuit's decision finding that "it is not clear that the Agreement waived the Tribe's right to pursue its suit against Becker in the tribal court" because the "court of competent jurisdiction" language in the Agreement could include the Tribal Court and that the waiver language may be void ab initio for failure to obtain federal government approval for the Agreement. Therefore, the court found that if the Agreement was void, the Tribal Court clearly had jurisdiction under the consensual relationship exception, and, if the Agreement was not void, the Tribal Court could still have jurisdiction under the "court of competent jurisdiction" language in the Agreement. The court further noted that if the parties had wanted to explicitly exclude any tribal court jurisdiction, they could have stated so in the Agreement. On June 9, 2017, the Tribal Court declined to stay the suit in Tribal Court on grounds of comity.

In December 2017, the Tribal Court addressed another motion to dismiss by Becker and another motion for partial summary judgment by the Tribe. The court denied both motions. Becker's motion to dismiss argued that under Section 1-2-3(5) of the Ute Law and Order Code, the Tribal Court could not be a "court of competent jurisdiction" as agreed to by the parties because both parties could not sue in Tribal Court. The Tribal Court, however, stated that it did not read "court of competent jurisdiction" so narrowly. The court, again, noted that the parties could have explicitly excluded Tribal Court jurisdiction but did not do so. Therefore, the court concluded that Section 1-2-3(5) does not deprive the court of jurisdiction over the pending lawsuit.

On the Tribe's motion for partial summary judgment that the Agreement could not waive sovereign immunity because the waiver was not in the resolution approving Becker's Agreement, as required by Section 1-8-5 of the Ute Law and Order Code, the court found that the language of waiver in the Agreement which was incorporated into the resolution was sufficient to comply with Section 1-8-5's requirement. The court noted that the Agreement has an Article entitled "Limited

7

Waiver of Sovereign Immunity; Submission to Jurisdiction," which the court assumed the members of the Business Committee would have read before approving of the Agreement. Therefore, the court denied the Tribe's motion and also denied Becker's motion because tribal court was likely a court of competent jurisdiction.

In a decision the next day, the Tribal Court addressed the Tribe's pending motions for partial summary judgment on whether the Agreement was void ab initio under federal law and void *ab initio* under Ute Indian Tribal law, Becker's motion for additional discovery and motion to compel, the Tribe's motion for protective order, and the Tribe's motion to dismiss Becker's counterclaims. The court denied all pending motions without prejudice and set a scheduling order allowing for discovery and briefing on the Tribe's motion on whether the Agreement was void *ab initio* under federal law, which it stated the court would decide before addressing any other claim.

In February 2018, the Tribal Court decided the Tribe's motion for partial summary judgment on whether the Agreement was void *ab initio* under federal and tribal law and a motion to reconsider whether the Tribe had waived tribal sovereign immunity in the Agreement. Becker had moved to compel additional discovery, renewed his motion to dismiss, and requested that the Tribal Court defer to the Utah state court action as a matter of comity.

The Tribal Court found that it had jurisdiction over Becker based on *Montana* exceptions for jurisdiction over non-Indians who enter into consensual relationships with the Tribe or whose activities upon tribal lands imperil the Tribe's political integrity, economic security, or health and welfare. *Montana v. United States*, 450 U.S. 544, 565-66 (1981). The court noted that the federal district court had also found that the Tribal Court possessed jurisdiction over the action based on Becker's relationship with the Tribe. The court noted on comity that it is limited to situations where two tribunals simultaneously possess concurrent jurisdiction and no court had issued a final

judgment as to jurisdiction over this action.

On the issue regarding waiver of sovereign immunity, the court reversed the prior decision because it did not find *Yazzie v. Ute Indian Tribe*, the decision relied on by the prior judge, to be persuasive authority because the *Yazzie* court found that it lacked subject matter jurisdiction but then proceeded to make substantive determinations. The Tribal Court also disagreed that allowing incorporation by reference actually complied with Section 1-8-5's requirement and that there was a factual basis for assuming that the Business Committee had notice. Therefore, the court found that the Tribe had not waived sovereign immunity.

With respect to whether the Agreement was void *ab initio*, the Tribal Court noted that it was undisputed that the Agreement was never authorized or approved by the federal government. The court explained that because it was undisputed that the revenue upon which Becker's 2% interest was to be calculated came from oil and gas production on land held in trust by the United States for the Ute Tribe, the Agreement needed federal approval. The court relied on substantial case law and experts presented by the Tribe on Indian mineral development and federal Indian law to determine that the Agreement was subject to federal review and approval, either under IMDA or 25 U.S.C. § 177. Absent such approval, the court found the Agreement void *ab initio*.

This decision was issued by a new tribal court judge. Becker claims that the Tribe terminated Judge Weathers, the judge who issued the first decision, when he ruled against the Tribe. However, the Tribe states that the contract it had with the Northwest Intertribal Court System expired and Judge Weathers, who was part of that network, was no longer retained. The Chief Judge of the Ute Indian Tribal Court reassigned the case to a new judge after the contract with the prior court system expired.

The February 2018 decision was made in between the two rulings by the Tenth Circuit in

the Becker federal case attempting to enjoin the Tribal Court. As noted above, at one point, the federal district court ruled that these findings and conclusions had no preclusive effect and stayed the Tribal Court proceedings. But the Tenth Circuit reversed the federal court and allowed the Tribal Court proceedings to continue.

The Tribal Court scheduled a four-day bench trial to commence on April 28, 2025. In March 2025, attorney Frances Bassett filed an emergency motion to vacate the trial setting due to the impending death of her mother. The Tribal Court granted the motion and directed the Tribe's counsel to coordinate with the court and opposing counsel in rescheduling the trial and entering an amended scheduling order. The Tribe's counsel verified that the earliest date the Tribal courtroom was open and that Judge Pechota and all expert witnesses were available for a rescheduled trial would be September 22-25, 2025. On August 4, 2025, the Tribe sent Becker's attorney an amended pretrial order for his review. Becker, however, on that same date, filed this new federal lawsuit. Becker moved this court for a preliminary injunction to enjoin the Tribal Court action and for a declaration that Becker did not need to exhaust his tribal remedies and/or that he had exhausted them. The Tribe filed a formal request for trial setting two days later. On August 12, 2025, Becker filed an objection to the trial setting and a motion to recuse Judge Pechota. The recusal motion has been certified to another Tribal Court judge for decision.

The parties disagree on whether the Tribal Court has held that Section 1-2-3(5) deprives the tribal court of jurisdiction over Becker's counterclaims. The Tribe asserts that the Tribal Court has repeatedly denied Becker's arguments regarding Section 1-2-3(5). Becker asserts that the Tribe and the Tribal Court agreed that the claims should be dismissed for lack of jurisdiction under Section 1-2-3(5). Because his claims were withdrawn, Becker asserts that he cannot appeal the claims to a higher Tribal Court and the claims are exhausted. This assertion, however, appears to

ignore the fact that Becker's claims are part of an overall case that involves several other claims and that his claims may be impacted by the decisions made regarding the other claims. It is undisputed that the Tribal Court action has not been fully resolved at the district court level, and no Tribal Court decisions have been appealed within the Tribal Court system.

Becker's Complaint in this new federal action asserts eight claims for relief: (1) declaratory judgment that no further Tribal Court exhaustion is required because the Tribal Court action is violative of the express jurisdictional prohibitions of Section 1-2-3(5); (2) declaratory judgment that no further Tribal Court exhaustion is required because any further exhaustion would serve no purpose other than delay; (3) declaratory judgment that no further Tribal Court exhaustion is required because the assertion of Tribal Court jurisdiction is motivated by a desire to harass Becker and is being conducted in bad faith; (4) declaratory judgment that Resolution 18-118 is void and contemptuous; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) unjust enrichment and quantum meruit; (8) knowing and reckless negligence manifesting a knowing and reckless indifference to Becker's rights.

## DISCUSSION

Becker moves for a preliminary injunction under Rule 65(b) of the Federal Rules of Civil Procedure. In response, the Tribe filed a Motoin to Dismiss and Motion to Strike.  Under Rule 65 of the Federal Rules of Civil Procedure, a party moving for a preliminary injunction "must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). It is the moving party's burden to

demonstrate that these factors weigh in its favor. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003). A preliminary injunction may be granted "only when monetary or other traditional legal remedies are inadequate, and 'the right to relief [is] clear and unequivocal.'" *First Western Capital Mngmt Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)).

Because Becker's ability to demonstrate a likelihood of success on the merits is related to the Tribe's Motion to Dismiss, the court will discuss them together. Becker argues that he is likely to succeed in showing that no further exhaustion duty exists. The Tenth Circuit recognized in Becker's previous federal court action that the exhaustion of tribal remedies is not jurisdictional and can be limited if some well-recognized exceptions exist. "The tribal-exhaustion rule states that 'absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted.'" *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation, et al.*, (10th Cir. 2022) (quoting *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011). However, the Supreme Court "has acknowledged that exhaustion is not required: (1) 'where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith'; (2) 'where the action is patently violative of express jurisdictional prohibitions'; or (3) 'where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.'" *Id.* (quoting *Nat'l Farmers*, 471 U.S. at 856 n.21. The Supreme Court has also held that tribal exhaustion may be excused "'where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve "no purpose other than delay."'" *Id.* (quoting *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1238 (10th Cir. 2014).

Becker argues that there is no exhaustion duty where any such exception is shown and that

he is likely to show three of these exceptions: (1) the Tribal Court action violates the jurisdictional prohibition in Section 1-2-3(5) of the Ute Tribe Law & Order Code; (2) because the Tribal Court lacks jurisdiction, any exhaustion requirement would serve no purpose other than delay; and (3) the assertion of Tribal Court jurisdiction here is motivated by a desire to harass Becker and is being conducted in bad faith.

The Tribe, however, moves for dismissal because the issues raised in Becker's Complaint have already been litigated and he has lost three times in the Tenth Circuit. It is clear that the state law contract and equitable claims Becker raises in his Complaint have previously been dismissed for lack of subject matter jurisdiction in *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 P.3d 944 (10th Cir. 2014) ("Becker I"). The mere passage of time and increased complexity of the dispute between the parties cannot resurrect these claims. Therefore, the court dismisses the breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and knowing and reckless negligence claims for lack of federal court subject matter jurisdiction pursuant to *Becker I*.

Becker's declaratory judgment claims are governed by previous Tenth Circuit decisions in this ongoing dispute. , In *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 868 F.3d 1199 (10th Cir. 2017) ("Becker II"), the Tenth Circuit held that the tribal exhaustion rule applies and that Becker had not shown a substantial likelihood of success on the exhaustion issue. *Id.* at 1205. In the third case, *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 11 F.4th 1140 (10th Cir. 2021), *cert. denied* 143 S. Ct. 273 (2022) ("Becker III"), the Tenth Circuit held that the exhaustion rule still applied: "Becker has not yet obtained appellate review of the Tribal Court's conclusions. Until [such] appellate review is complete, the Tribal Courts have not had a full opportunity to evaluate the Tribe's claims and federal courts should not intervene." *Id.* at 1150

13

(cleaned up). Becker now asks this court to take jurisdiction over the dispute before the Tribal Court has held a trial or any appeal has occurred in the Tribal Court system. The court cannot do so. The Tenth Circuit has stated that the tribal exhaustion rule applies until the parties have completed the appellate process in Tribal Court. "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mut.*, 480 U.S. at 17.

While Becker claims that the Tribe's exhaustion claims are gutted by the Tribal Court's rulings, the opposite is true. An appeal has not happened in Tribal Court and several issues ruled on by the Tribal Court are fundamental to the dispute. The November 2024 decision in Tribal Court dismissed Becker's counterclaims on the merits, not on account of jurisdiction. The court dismissed Becker's counterclaims based on sovereign immunity, statute of limitations, and failure to join the United States as a necessary party. These rulings on the merits are appealable to the Tribal Court of Appeals.

Becker's Complaint relies on exceptions to tribal court exhaustion identified in *Iowa Mutual*. He asserts that the Tribal Court action violates express jurisdictional prohibitions in Tribal law, that exhaustion would serve no other purpose than delay, and that the assertion of Tribal Court jurisdiction is done in bad faith and motivated by an intent to harass him. The Tenth Circuit already rejected these claims in Becker II and Becker III. The Tenth Circuit specifically stated that Becker had not persuaded it that any of the narrow exceptions applied in this case. Moreover, the court has reviewed all the rulings from the Tribal Court and has found them thorough and well-reasoned decisions. There is no basis for finding that a reconsideration of one issue, and a difference of opinion between two judges on the relevance of a case, amounts to bad faith or harassment. Moreover, that issue is something that can be brought up in an appeal in the Tribal Court system.

Becker cannot keep bringing the same issues before this court. Becker needs to abide by Becker II and Becker III.

Furthermore, since Becker II and III, there is no new evidence of delay or bad faith in Tribal Court. Earlier delays in Tribal Court were frequently caused by this court enjoining proceedings and the Tenth Circuit needing to review such decisions. Becker sought those delays, and the Tenth Circuit has already addressed those delays. Becker's contentions regarding the delay of the April 2025 trial date are without merit. The April 2025 trial needed to be rescheduled because one of the attorney's needed to attend to the imminent death of her mother. The earliest time the court, Tribe, and experts could reschedule the trial was September 22-25, 2025. Becker takes issue with the Tribe contacting the court to find a new trial date, but it is customary, at least at this court, for parties to call the court to inquire about the court's trial schedule and availability. This type of everyday interaction is not nefarious. Moreover, by filing the present federal court action, Becker is now the one delaying proceedings in Tribal Court. It does not make sense to let Becker begin the same suit over and over in federal district court regarding exceptions to the tribal exhaustion rule. It is disruptive to the parties' resolution of the dispute.

Becker II and Becker III govern the present action, and the court dismisses this case without prejudice until Becker exhausts his Tribal remedies through the tribal district court and appellate process. *Becker III*, 11 D.4th at 1150 ("'If [and when] the Tribal Appeals Court upholds the lower court's determination that the tribal courts have jurisdiction, [Becker] may challenge that ruling in District Court.' In the meantime, we conclude that the proper course of action is to remand to the district court with directions to dismiss Becker's federal action without prejudice.") Therefore, the court grants the Tribe's Motion to Dismiss Becker's declaratory judgment claims without prejudice as well.

15

Because the court has determined that Becker's state court claims and his declaratory judgment claims should be dismissed, he fails to meet his burden of demonstrating a likelihood of success on the merits. Accordingly, Becker cannot demonstrate that complying with the Tenth Circuit mandates is causing him irreparable harm. And, allowing a new federal action to begin prior to the current Tribal Court action concluding is contrary to the public interest of following the mandate from higher courts. Therefore, the court denies Becker's motion for preliminary injunction.

The Tribe asks for Becker's Complaint to be stricken because it is replete with scurrilous, offensive, and objectionable allegations, including ad hominem attacks on the Tribe, the Tribe's counsel, and Tribal Court judges. The Tribe recognizes that motions to strike are generally disfavored. However, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matters of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations." 5A C. Wright and A. Miller, *Federal Practice and Procedure (Civil) 2d*, § 1382, at 714 (1990). The Tribe asks for the entire Complaint to be stricken because there is no factual or legal predicate for Becker's claims and the Complaint is an affront to the dignity of the court which has mandated that he complete tribal proceedings. *Hohensee v. Watson*, 188 F. Supp. 941, 943 (M.D. Pa. 1959). Alternatively, the Tribe asks for specific allegations to be stricken from the Complaint— Paragraphs 31-36, 54-62, 63-93, and 94-133.

The court does not find that there are grounds for striking the entire Complaint. And, while the court agrees that Paragraphs 31-36, 54-62, 63-93, and 94-133 are speculative and lack support, the Tribe has adequately countered the allegations with evidence demonstrating their lack of merit. Therefore, the court does not find that it is necessary to strike the paragraphs.

## CONCLUSION

Based on the above reasoning, Plaintiff Lynn D. Becker's Motion for Preliminary Injunction [ECF No. 6] is DENIED, Defendants Ute Indian Tribe of the Uintah and Ouray Reservation, the Uintah and Ouray Tribal Business Committee, and Ute Energy Holdings, LLC's (collectively "the Tribe") Rule 12(b) Motion to Dismiss [ECF No. 19] is GRANTED, and Defendant Ute Energy Holdings LLC's Rule 12(f) Motion to Strike Becker's Complaint or Alternatively to Strike Redundant, Immaterial, Impertinent, and Scandalous Matters In It [ECF No. 17] is DENIED. Becker's action is dismissed without prejudice.

DATED this 11th day of February 2026.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE